**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CORNELL-DUBILIER ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALLIANZ VERSICHERUNGS AG, et al., <br><br> Defendants. | Civil Action No. 18-5947(SDW)(SCM) <br><br> **OPINION** <br><br><br> February 6, 2019 |

**WIGENTON**, District Judge.

Before this Court is Defendants SCOR Global P&C SE, as successor in interest to Societe Commerciale de Reassurance (sued herein as "SCOR," "SCOR CCR," "SCOR FACULT" and "SCOR TRAITE"); Riverstone Insurance (UK) Limited, as successor in interest to L'Independence; Mutuelle Generale Francaise Accidents; Generali IARD as successor in interest to Le Continent (sued herein as Le Continent Holding S.A.); Allianz IARD S.A., as successor in interest to Assurances Générale de France; Compagnie d'Assurances Maritime Aeriennes et Terrestres and companies (sued herein as "La Fonciere," "La Preservatrice," and "Preservatrice Fonciere"); and AXA Corporate Solutions Assurance, as successor in interest to Groupe Drouot; and L'Union des Assurances de Paris's (collectively, the "French Market Insurers" or "FMI")[1] motion to stay Cornell-Dubilier Electronics, Inc.'s ("CDE" or "Plaintiff") suit and compel arbitration of its claims pursuant to Federal

---

[1] Defendants Employers Insurance of Wausau ("Wausau"), Gibralter Insurance Company ("Gibraltar"), International Insurance Company ("IIC"), and Employers Mutual Casualty Company joined FMI's motion. (*See* D.E. 21-11; 41.) Plaintiff has informed this Court that Allianz Versicherungs AG and Insurance Company of Florida, although identified on the docket as defendants, were previously dismissed from this action before it was removed. (D.E. 30 at 12.) The remaining three defendants, Groupe Chegaray, Mead Reassurance, and Groupe de Leseleuc, have neither appeared, nor joined in this motion. FMI claims that it was unable to notice those entities because they are insolvent or have no discoverable contact information. (D.E. 18 at 2 n.3; 18-2 at ¶¶ 4, 9-13.)

Rule of Civil Procedure 12(b), the Convention on the Recognition of Foreign Arbitral Awards and Agreements, 9 U.S.C. § 201 *et seq.* (the "Convention"), and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1441. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** FMI's Motion.

I. BACKGROUND AND PROCEDURAL HISTORY

The current suit involves a dispute over insurance coverage for "environmental contamination at a Superfund site located at 333 Hamilton Boulevard, South Plainfield, New Jersey" (the "Site"). (D.E. 11-3 ¶¶ 1, 27.) CDE, a former subsidiary of Exxon Mobil Corporation ("Exxon")[2], is liable for damage from the release of certain chemicals at the Site,[3] and now seeks indemnification from the defendant insurers under general liability insurance policies Exxon entered into from January 1, 1980 through November 1, 1983 (the "Exxon Policies"). (*Id.* ¶¶ 17-36; Ex. A (listing policies at issue).) Those policies[4] contain the following arbitration provision, which provides, in relevant part:

> In the event of any difference arising between the Insured and the Insurers with reference to this insurance such difference may, at the request of either party (after all requirements of this insurance with respect to recovery of any claim shall have been complied with), be referred to three disinterested arbitrators, one being chosen by the Insured, one chosen by the Insurers, and the third chosen by the two aforesaid arbitrators before they enter into arbitration. . . . Any such arbitration shall take place in New York, N.Y. unless otherwise agreed by both parties, and the expense of arbitration shall be borne and paid as directed by the arbitrators.

---

[2] In 1979, "CDE, together with its then parent corporation Federal Pacific Electric Company ("FPE"), became a wholly owned subsidiary of Reliance Electric Company ("Reliance")." (D.E. 11-3 ¶ 17.) Later that year, Exxon "acquired Reliance, and Reliance became a wholly owned subsidiary of Exxon." (*Id.*)
[3] *See* D.E. 11-3 ¶¶ 27-31.
[4] It is unclear whether all the Exxon Policies contain the arbitration provision. In the Amended Complaint, Plaintiff alleges that "some" of the policies contain the provision. (D.E. 11-3 ¶¶ 46-47.) FMI, on the other hand, claims that the provision is "integrated in the applicable wordings in each of the policies under which CDE asserts its claims." (D.E. 18 at 3, 5.) The parties have not asked this Court to resolve that issue, and because the parties' briefing treats the provision as applying to all the Exxon Policies, this Court will do the same.

(D.E. 11-3 ¶ 47.)

Plaintiff initially filed suit in the Superior Court of New Jersey, Law Division, Middlesex County, and on December 31, 2018, filed an Amended Complaint alleging breach of contract (Count I) and breach of duty of good faith (Count II), and seeking declaratory judgment that Plaintiff is not required "to arbitrate any disputes arising under the Exxon Policies." (*Id.* at 8-12.) Defendants removed to this Court on November 8, 2018, and moved to compel arbitration on November 14, 2018. (D.E. 1; 18.) Briefing on the motion was completed on January 16, 2019. (D.E. 21, 30, 38, 39, 41, 45.)

## II.   LEGAL STANDARD[5]

There is a "strong policy in the federal courts favoring arbitration, especially in the context of international agreements." *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmBH*, 585 F.2d 39, 44 (3d Cir. 1978); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). As such, "arbitration provisions are to be liberally construed" and "'any doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless a court can state with "positive assurance" that this dispute is not meant to be arbitrated.'" *Becker*, 585 F.2d at 44-45 (internal citations omitted).

Arbitration provisions in international commercial agreements are governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), codified at 9 U.S.C. § 201-208. *See Standard Bent Glass Corp. v. Glassrobots Oy*,

---

[5] Where a Court is asked to determine whether a valid arbitration agreement exists, it must first decide whether to use the Rule 12(b)(6) or Rule 56 standard of review. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). Here, however, the Amended Complaint contains the arbitration provision, and Plaintiff concedes its validity. (D.E. 11-3 at 10-12.) Therefore, Rule 12(b)(6)'s standard of review is appropriate and this Court may not consider evidence extraneous to the pleadings. *See, e.g.*, *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (noting that the Rule 12(b)(6) standard applies when arbitrability is "apparent, based on the face of a complaint, and documents relied upon in the complaint"); *see also In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 184 F.3d 280, 292 (3d Cir. 1999). This Court will limit itself to the Amended Complaint and the documents referenced therein, and will not consider the numerous exhibits attached to the parties' briefs.

333 F.3d 440, 448–49 (3d Cir. 2003). "Where a dispute arises from an international commercial agreement, a court must address four factors to determine whether the arbitration agreement falls under" the Convention. *Id.* (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186–87 (1st Cir.1982)). Those factors are: 1) the existence of a written agreement; 2) that provides for arbitration in the territory of a signatory of the Convention; 3) that is also commercial in nature; and 4) which is not entirely domestic in scope. *See Ledee*, 684 F.2d at 186-87. If all four factors are satisfied, "the court must order arbitration unless it determines the agreement is null and void." *Standard Bent*, 333 F.3d at 448-49.[6] This is a "very limited inquiry," *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (citing cases), which leaves to the arbitrators procedural questions such as whether the parties satisfied any prerequisites or met conditions precedent to arbitration. *See, e.g.*, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) (holding that, when seeking a stay of a federal action while arbitration is pending "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate"); *Howsman v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002) (noting that procedural issues, such as whether prerequisites to arbitration were met are questions for an arbitrator); *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585-86 (3d Cir. 2007) (distinguishing between "questions of arbitrability (for the court) and questions of arbitral procedure (for the arbitrator)").

### III. DISCUSSION

Reviewing each of the four factors in turn, this Court is satisfied that arbitration is appropriate in this matter. First, neither party disputes that the Exxon Policies contain a valid, written arbitration

---

[6] Defendants also move to compel arbitration pursuant to the Federal Arbitration Act ("FAA") to the extent that it does not conflict with the Convention. (D.E. 18 at 1.) The FAA similarly operates to ensure the enforcement of private arbitration agreements. *See, e.g.*, *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344-45 (2011); 9 U.S.C. § 2 (2015). "When a district court is presented with a motion to compel arbitration, it must answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement." *Ellin v. Credit One Bank*, Civ. No. 15-2694, 2015 WL 7069660, at *2 (D.N.J. Nov. 13, 2015); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 525 (3d Cir. 2009).

4

provision, which requires arbitration of "any difference arising between the Insured and the Insurers." (D.E. 11-3 ¶ 47.)[7] Second, the arbitration agreement provides for arbitration in New York, New York, and the United States is a signatory to the Convention. (*See* http://www.newyorkconvention.org/countries (identifying signatories).) Third, insurance and reinsurance contracts are commercial in nature. *See, e.g. VVG Real Estate Inv. v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1205 (S.D. Fla. 2018) (recognizing insurance contracts as being "commercial in nature"); *Viator v. Dauterive Contractors, Inc.*, 638 F. Supp. 2d 641, 647 (E.D. La. 2009) (same); *Meadows Indem. Co. Ltd. v. Baccala & Shoop Ins. Servs. Inc.*, 760 F. Supp. 1036 (E.D.N.Y. 1991) (treating insurance and reinsurance contracts as commercial agreements). Fourth, this matter is not entirely domestic in scope. Matters are entirely domestic in scope only when they are 1) "between two United States Citizens," 2) "involve property located in the United States," and 3) "have no reasonable relationship with one or more foreign states." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997); *see also Jain v. de Méré*, 51 F.3d 686, 689 (7th Cir. 1995). CDE is a Delaware Corporation with a principal place of business in the United States. (D.E. 11-3 ¶ 1.) The French Market Insurers are French and/or British entities with principal places of business in France or the United Kingdom. (*Id.* ¶¶ 2-12.) Therefore, this dispute is not between citizens of the United States. As a result, FMI's motion to compel will be granted.[8] This matter will be administratively terminated pending the outcome of arbitration. This case may be reinstated to the Court's active docket upon written notice from the parties following the conclusion of arbitration.

---

[7] This Court is not persuaded by Plaintiff's argument that arbitration is inappropriate because FMI has challenged Plaintiff's claims for coverage and, therefore, "all requirements of this insurance with respect to recovery of any claim" have not been complied with. (D.E. 30 at 17-20, 26-31; D.E. 18 at 9.) The question of whether any prerequisites to arbitration have been met is one for the arbitrators, not this Court.
[8] This Court also finds no basis to deny FMI's motion because three of the named defendants, Groupe Chegaray, Mead Reassurance, and Groupe de Leseleuc have not joined FMI's motion. (D.E. 30 at 21-26). Nothing in the arbitration provision requires that all insurers join a single motion to compel arbitration, and this Court will not read such a requirement into the contractual language.

5

## IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel Arbitration is **GRANTED**. This matter is administratively terminated pending the outcome of arbitration. An appropriate order follows.

/s/ Susan D. Wigenton  
**SUSAN D. WIGENTON, U.S.D.J.**

cc: Clerk  
Parties  
Magistrate Judge Leda D. Wettre